```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION
```

EPCON INDUSTRIAL SYSTEMS, L.P., §
                                §
        Plaintiff,               §
                                §
v.                              §     CIVIL ACTION NO. H-06-4123
                                §
PROGRESSIVE DESIGN, INC.,        §
                                §
        Defendant.               §

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] is Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 35) and Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 43). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff's motion.

**I.  Case Background**

Epcon Industrial Systems, L.P. ("Plaintiff") brought this breach of contract action against Progressive Design, Inc. ("Defendant"), alleging a failure to pay amounts due under their agreement.[2] Plaintiff is a manufacturing company located in

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 19, 21.

[2] In its complaint, Plaintiff alleged additional claims of conversion, fraud, breach of fiduciary duty, and theft of services, none of which are the focus of this motion. See First Amended Complaint ("Complaint"), Docket Entry No. 33, p. 4-7.

Montgomery County, Texas.[3]  Defendant is an industrial engineering and design firm organized and located in Virginia.[4]

In December 2005, Philip Morris USA, Inc., ("Philip Morris") entered into a contract ("Prime Contract") with Defendant for the "engineering, design, procurement, installation, start-up, and testing" of an industrial incinerator system in Philip Morris's Richmond, Virginia, facility.[5]  After entering into the Prime Contract, Defendant entered into a contract ("Subcontract") with Plaintiff, wherein Plaintiff was to design, manufacture, and install a thermal oxidizer system, ultimately for Philip Morris.[6]  Plaintiff and Defendant later entered into additional agreements beyond those involving the Philip Morris incinerator system.[7]

The Subcontract provided, in part, that disputes related to the contract could be raised "at law or in equity[] in a Court of competent jurisdiction"[8] and incorporated the Prime Contract by stating:

> Subcontractor [Plaintiff] shall be bound to the Contractor [Defendant] in the same manner, to the same

---

[3]  Id. at 1.

[4]  Defendant's Response to Plaintiff's Motion for Partial Summary Judgment ("Response"), Docket Entry No. 43, p. 7.

[5]  Id. at 7; Ex. 1, Contract Between Philip Morris and Progressive, ¶ 3.1.

[6]  Complaint, Docket Entry No. 33, p. 2.

[7]  Plaintiff's Motion for Partial Summary Judgment ("MPSJ"), Docket Entry No. 35, p. 5.

[8]  Response, Docket Entry No. 43, Ex. 2, Subcontract Agreement, ¶ 7.

> extent, and with the same force and effect that the Contractor is bound to the Owner [Philip Morris] by all of the terms, provisions, general conditions and special conditions of the Prime Contract, except as may be expressly modified by this Subcontract.[9]

Although the Subcontract itself did not contain a choice of law provision, the Prime Contract called for the application of Virginia law to the "validity, interpretation, construction and performance of the Contract."[10]

Plaintiff manufactured the incinerator at its facilities in Texas.[11] According to Robert Ranson, Defendant's President, during the course of the incinerator project, Plaintiff repeatedly produced design drawings which were not in accord with industry or Philip Morris's standards, resulting in engineering and design costs to Defendant.[12] Ranson states that Plaintiff's plan for the Factory Acceptance Test and the controls narrative provided for Defendant (describing the system's sequence of operation) were not up to Philip Morris's standards.[13] Plaintiff also failed to meet project schedule deadlines, which cost Defendant additional

---

[9] Id. at ¶ 1.

[10] Id. at Ex. 1, Contract Between Philip Morris and Progressive, ¶ 24.7.

[11] See MPSJ, Docket Entry No. 35, p. 8.

[12] Response, Docket Entry No. 43, Ex. A, Declaration of Robert A. Ranson, Jr. ("Ranson Declaration"), ¶ 9; see also Ex. C, Declaration of Richard Fogg ("Fogg Declaration"), ¶¶ 7-10.

[13] Ranson Declaration at ¶¶ 13-14; Fogg Declaration at ¶¶ 11-12.

engineering, design, project management, and construction management costs.[14]

The incinerator was shipped to Virginia, where Plaintiff's representatives traveled to oversee installation and start-up.[15] Defendant reports that numerous problems arose after installation; many of these problems Plaintiff has refused to remedy and, consequently, Defendant is continuing to incur remedial costs.[16] In addition to the deficiencies for which Defendant has already hired another subcontractor or employed its own internal resources to remedy, Philip Morris engineer, Jack Scureman, reports a laundry list of problems that must be corrected before Philip Morris will accept the incinerator system.[17] The list includes the warped underside of the retention chamber, hotspots found in the incinerator, and pinholes and cracks in the combustion chamber of the incinerator system.[18] Scureman, who has the authority to accept the incinerator project on behalf of Philip Morris, has indicated that he will not accept the system until satisfied that all of the above items are remedied in accord with Philip Morris's standards.[19]

---

[14] Ranson Declaration at ¶ 15; see also Response, Docket Entry No. 43, Ex. B, Declaration of John W. Waddill, Jr. ("Waddill Declaration"), ¶¶ 9-11.

[15] Waddill Declaration at ¶ 12.

[16] Id. at ¶ 13; Ranson Declaration at ¶ 25.

[17] Response, Docket Entry No. 43, Ex. D, Declaration of Jack S. Scureman ("Scureman Declaration"), ¶¶ 10, 12.

[18] Id. at ¶ 12.

[19] Id. at ¶¶ 11-12.

Throughout the manufacturing process, Plaintiff billed Defendant in increments, with payments to be made to Plaintiff in Montgomery County, Texas.[20] Defendant performed its payment obligation on four separate occasions.[21] The fifth invoice, dated May 16, 2006, required payment in the amount of $454,397.50, but Defendant paid only $200,000.00.[22]

In addition to the $254,397.50 outstanding from the May 2006 invoice, Plaintiff's records indicate Defendant owes Plaintiff the following payments: (1) $112,400.00, requested July 6, 2006; (2) $174,739.00, requested September 8, 2006; and (3) $102,076.24, requested October 17, 2006.[23] Tasneem Khan, custodian of Plaintiff's records, and Ranson, Defendant's President, exchanged multiple e-mails regarding the October 2006 invoice.[24] In one of these e-mails, Ranson informed Khan that the October invoice for $102,076.24 had been approved for payment.[25] When Plaintiff did not receive said payment on the date indicated in Ranson's e-mail, Khan

---

[20]   Complaint, Docket Entry No. 33, p. 2.

[21]   Id.

[22]   Id. at 2-3.

[23]   Id. at 3; Affidavit of Aziz A. Jamaluddin, Docket Entry No. 25, Ex. K.

[24]   MPSJ, Docket Entry No. 35, p. 6-7.

[25]   Id.

inquired further and Ranson informed her that he needed to consult with legal counsel before releasing more payments to Plaintiff.[26]

Plaintiff has yet to receive payment on the July, September, and October 2006 invoices, or the remainder of the May 2006 invoice.[27]  Ranson explains that Defendant later reconsidered and rescinded its approval of the October 2006 invoice payment due to Plaintiff's refusal to complete work on the incinerator system and failure to consider price deductions for:  (1) incinerator components that Plaintiff had not delivered; (2) an incinerator platform approximately two-thirds the size of the platform for which Defendant was billed; and (3) work that Defendant had to perform, or hire other subcontractors to perform, in order to bring the incinerator up to Philip Morris's requisite standards.[28] Finally, Ranson states that, even though Philip Morris has paid Defendant in full for the incinerator, Philip Morris has not accepted the system; and, until it does so, Defendant will be forced to expend even more of its own resources to ensure the incinerator system meets Philip Morris's standards.[29]

---

[26]   Id.

[27]   Complaint, Docket Entry No. 33, p. 3.

[28]   Ranson Declaration at ¶ 29.

[29]   Id. at ¶¶ 24, 34; see also Scureman Declaration at ¶ 12.

After Defendant continued to refuse to pay the submitted invoices, Plaintiff filed this lawsuit in state court.[30] Defendant removed the action to this court on December 29, 2006.[31] Defendant filed a motion to dismiss on January 22, 2007,[32] which the court denied in an opinion dated April, 25, 2007.[33]

Plaintiff filed this motion for partial summary judgment on May 22, 2007, asserting that Defendant breached the Subcontract and unjustly withheld undisputed payments owed to Plaintiff in the amount of $425,694.77.[34] Plaintiff also seeks pre- and post-judgment interest, court costs, and reasonable and necessary attorneys' fees.[35] In its response dated February 26, 2007, Defendant maintains that it did not breach the Subcontract and asks the court to deny Plaintiff's motion. Even if Defendant breached the Subcontract, Defendant asserts that Plaintiff lost its right to enforce the contract as a result of its failure to fully perform its contractual duties prior to Defendant's alleged breach. Defendant also disputes the propriety of the amounts billed in the invoices at issue.

---

[30] See Complaint, Docket Entry No. 33, p. 3.

[31] See Notice of Removal, Docket Entry No. 1, p. 1.

[32] See Defendant's Motion to Dismiss, Docket Entry No. 9, p. 1.

[33] See Memorandum Opinion, Docket Entry No. 31, p. 1.

[34] MPSJ, Docket Entry No. 35, p. 13.

[35] Id. at 5.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

The nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Choice of Law

Defendant asserts that the breach of contract claim at issue here is governed by the law of the Commonwealth of Virginia, not Texas law as applied by Plaintiff in its motion.[36] The Subcontract

---

[36] Response, Docket Entry No. 43, p. 23.

incorporates the choice of law provision of the Prime Contract by reference.[37] The Prime Contract states: "The laws of the Commonwealth of Virginia shall govern the validity, interpretation, construction and performance of the Contract, without regard to the place of execution."[38] Plaintiff bases all of its summary judgment arguments on Texas law without explaining why Texas law applies to a contract that specifically states that it is to be governed by Virginia law.

"In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state," which, in this case, is Texas. Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 403 (5th Cir. 2004) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Texas choice of law principles will enforce a choice of law provision in a contract unless: (1) the chosen state has no substantial relationship to the parties or transaction at issue and there is no other reasonable basis for the choice of law, or (2) application of the chosen law would be contrary to a fundamental public policy of a forum state that has a materially greater interest than the chosen state in the determination of the issue. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990). See also Caton v.

---

[37]   Id. at Ex. 2, Subcontract Agreement, p. 1.

[38]   Id. at Ex. 1, Contract Between Philip Morris and Progressive, ¶ 24.7.

Leach Corp., 896 F.2d 939, 942 (5th Cir. 1990) (applying Texas law).[39]

By incorporating the Prime Contract into the Subcontract, the parties chose the law of Virginia to govern the Subcontract. Virginia has a substantial relationship to the parties and the transaction at issue because Defendant's business is located in Virginia and the asserted invoices were sent to Defendant in Virginia. Moreover, the primary purpose of the Subcontract and the focus of this litigation, the incinerator system, is now located at the Philip Morris facility in Richmond, Virginia. Thus, Virginia law should apply here unless it would be contrary to a fundamental Texas public policy and Texas has a materially greater interest than Virginia in deciding this case.

"In analyzing whether fundamental policy is offended . . . , the focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction."

---

[39] Plaintiff asserts various claims in its First Amended Complaint, including those arising out of both contract and tort. For all choice of law questions which are not based on a contract with a valid choice of law clause, Texas courts apply a "most significant relationship" test. Mayo, 354 F.3d at 403 (applying Texas law). See also Red Roof Inns, Inc. v. Murat Holdings, 223 S.W.3d 676, 684 (Tex. App.–Dallas 2007, pet. denied) ("A choice of law provision in a contract that applies only to the interpretation and enforcement of the contract does not govern tort claims."). Because Plaintiff's Motion for Partial Summary Judgment only addresses the claims arising out of the Subcontract, the court is only determining which state's law applies to contract claims.

DeSantis, 793 S.W.2d at 680.  Plaintiff offered no evidence or argument that Texas has a materially greater interest than Virginia in deciding this case, or that applying Virginia law would be contrary to a fundamental Texas policy.  While Texas may have an interest in hearing a case in which a Texas resident is alleging harm, the court does not find that the evidence herein precludes application of Virginia law in accord with the choice of law provision incorporated by reference into the Subcontract.

## IV.  Analysis

Plaintiff asserts that Defendant breached their agreement. Plaintiff further asserts that it fully performed its duties under the Subcontract; the equipment was built, delivered, and accepted by Defendant per their agreement.  Plaintiff submitted invoices to Defendant, some of which Defendant has refused to pay.  Plaintiff contends that one such payment was approved by Defendant but withheld to "spite Epcon for filing the lawsuit."[40]  Plaintiff asks the court to award undisputed payments due Plaintiff in the amount of $425,694.77, plus interest, costs, and attorneys' fees.[41] Plaintiff contends that it invoiced Defendant a total of $843,612.74; $200,000.00 of which has been paid by Defendant and $217,917.97 of which is still "in dispute."[42]  Consequently,

---

[40]   MPSJ, Docket Entry No. 35, p. 5.

[41]   Id.

[42]   Id. at 13.

Plaintiff argues that it is entitled to the balance of $425,694.77.[43]

Defendant asks the court to deny Plaintiff's motion based upon genuine issues of material fact as to: (1) Plaintiff's completion of its obligations under the Subcontract; (2) Philip Morris's acceptance of the incinerator system; (3) the backcharges and offsets altering payments that may be due Plaintiff; and (4) Plaintiff's breach of the Subcontract prior to any alleged breach by Defendant.  Defendant asserts that it is not in breach of the Subcontract, nor is it withholding payment without justification.

The elements of a breach of contract action under Virginia law are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  Ulloa v. QSP, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006) (quoting Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)).  Neither party questions the validity of the Subcontract or that, under the contract, each party has an obligation to the other.  The question here is whether there was a violation of said obligation and, if so, by whom.

If Defendant violated its contractual obligations and Plaintiff was harmed by Defendant's actions, then Defendant is in breach of the Subcontract.  However, even if Plaintiff establishes

---

[43]   Id.

13

that Defendant violated its contractual duties, Plaintiff will still not be entitled to enforce the contract if Plaintiff breached the contract prior to Defendant's violation. See Countryside Orthopaedics, P.C. v. Peyton, 261 Va. 142, 154, 541 S.E.2d, 279, 285 (2001) (citing Hurley v. Bennet, 163 Va. 241, 253, 176, S.E. 171, 175 (1934) ("The party who commits the first breach of a contract, is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform.")). Virginia recognizes the doctrine of first breach, wherein a party committing a material breach cannot enforce the contract against a subsequent breaching party. See id. at 154. The Virginia Supreme Court instructs: "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." Id.

This dispute is based almost exclusively on the facts. Both parties offer evidence that the other party is in breach of the Subcontract. Plaintiff asserts that it fully complied with its obligations, but almost all of its summary judgment evidence and arguments are directed to Defendant's failure to make payment on certain project invoices. Defendant asserts that Plaintiff did not perform its requisite duties under the Subcontract prior to Defendant's refusal to make payment on the submitted invoices; thus, Plaintiff breached first and has no right to enforce the

Subcontract.  Since Plaintiff's right to recover under the Subcontract depends upon whether Plaintiff was in breach, the court looks to the evidence on that issue before considering what invoices and amounts may or may not be in dispute.

Defendant offers sufficient evidence to establish the existence of a genuine issue of material fact.  In its response, Defendant submitted the affidavits of three of Defendant's employees, including Defendant's President, and also offered the affidavit of Jack Scureman, Philip Morris's staff engineer and incinerator system project manager.  The affidavits attest to the multiple aspects of Plaintiff's performance which failed to satisfy Plaintiff's contractual obligations or meet industry or Philip Morris's standards prior to Defendant's alleged breach.  Specifically, the affidavits indicate: (1) Plaintiff repeatedly provided flawed drawings; (2) Plaintiff's plan for the Factory Acceptance Test was unacceptable; (3) the proffered controls narrative was deficient; (4) Plaintiff failed to follow the project schedule and meet deadlines set in the contract; and (5) a laundry list of incinerator system problems remain to be fixed.

Plaintiff contends that Defendant accepted the incinerator system.  Defendant argues that neither it nor Philip Morris has accepted Plaintiff's work.  Defendant points to language in the Subcontract that states: "Payment will be made by Contractor [Defendant] to Subcontractor [Plaintiff] only for actual quantities

of the Work that is performed to the satisfaction of the Contractor and Owner [Philip Morris]."[44]  It further states: "Final Payment is to be made by Contractor upon acceptance of the Work and final payment by Owner."[45]  Defendant has been paid in full by Philip Morris for the incinerator system; however, according to the terms of the Subcontract, payment does not equal acceptance.[46]  Scureman states that he has the authority to accept the incinerator on behalf of Philip Morris, but has not and will not accept the system until all of the items that fail to meet Philip Morris's requirements and standards are remedied.  Defendant offers evidence of additional engineering, design, project management, and construction management costs that may continue to be necessary until the problems with the incinerator system are fixed and Philip Morris accepts.

The court finds a genuine dispute of material fact as to which party is in breach of the Subcontract.  Moreover, even if the court did not find a dispute as to who breached the contract, a genuine issue would still remain as to the invoice payments that Plaintiff asserts it is entitled to.

Plaintiff argues that Defendant has no justification for its refusal to make full payment on the invoices that Plaintiff has

---

[44]     Response, Docket Entry No. 43, Ex. 2, Subcontract Agreement, ¶ 8.

[45]     Id.

[46]     See id.

16

submitted. Plaintiff asserts that the October 2006 invoice was initially approved by Defendant, but later withheld out of "spite" for Plaintiff's filing of this lawsuit. Plaintiff asks the court to grant summary judgment in its favor for what it asserts is the undisputed amount of $425,694.77 ($843,612.74 in submitted invoices - $200,000.00 paid by Defendant - $217,917.97 "in dispute" = $425,694.77). Plaintiff argues that only $217,917.97 in backcharges is in dispute, as allegedly admitted by Defendant in its answer to Plaintiff's First Amended Complaint.

Defendant admits that the October 2006 invoice was initially approved for payment and later rescinded. However, Defendant disputes that the payment was withheld out of spite. Defendant asserts that it withheld payment pursuant to its rights under the Subcontract and as a result of Plaintiff's first breach of the contract. Moreover, Defendant disputes the specific amounts of the invoices to which Plaintiff claims it is entitled. Defendant submitted affidavits from Progressive and Philip Morris employees that state that the invoices submitted did not include, inter alia, deductions for: (1) components not delivered; (2) a smaller platform than that which was billed; (3) Plaintiff's failure to meet project deadlines; and (4) the time and resources, including the hiring of other subcontractors, to compensate for Plaintiff's failure to complete the work according to the Subcontract.

Defendant also disagrees with Plaintiff's assertion that $425,694.77 of the outstanding invoices is undisputed. Included in Plaintiff's calculation is an "undisputed" sum of $217,917.97. However, taking a closer look at Defendant's Answer and Counterclaim, it states: "Progressive has suffered damages in an amount to be proven at trial but <u>not less than</u> $217,917.97."[47] Defendant claims the actual amount of backcharges is unknown as costs will continue to accrue until the incinerator system is fixed to Philip Morris's standards.[48]

Drawing all reasonable inferences in favor of Defendant as the non-moving party, the court finds that the dispute as to which party, if any, is in breach of the Subcontract and the appropriate amounts of the submitted invoices is supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Consequently, the court finds summary judgment to be inappropriate in this case.

---

[47] Defendant's Answer and Counterclaim to Plaintiff's First Amended Complaint, Docket Entry No. 39, p. 14 (emphasis added).

[48] <u>See</u> Ranson Declaration at ¶ 9.

## V. Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Partial Summary Judgment (Document Entry No. 35).

**SIGNED** in Houston, Texas, this 28th day of December, 2007.

Nancy K. Johnson
United States Magistrate Judge

19